IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:19-cv-00009-MR

| | |
|---|---|
| NEXUS TECHNOLOGIES, INC., DANIEL CONTI and BENJAMIN BOMER,<br><br>Plaintiffs,<br><br>vs.<br><br>UNLIMITED POWER LTD. and CHRISTOPHER J. PETRELLA,<br><br>Defendants. | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on Defendants Unlimited Power Ltd. and Christopher J. Petrella's Motion to Dismiss Plaintiff's Complaint [Doc. 11].

## I.  BACKGROUND

On January 9, 2019, the Plaintiffs Nexus Technologies, Inc. ("Nexus"), Daniel Conti ("Conti"), and Benjamin Bomer ("Bomer") (collectively "Plaintiffs") filed this civil action against the Defendants Unlimited Power LTD. ("Unlimited Power") and Christopher J. Petrella ("Petrella") (collectively "Defendants") to correct inventorship of U.S. Patent Nos. 9,865,903 ("the '903 Patent"), 10,084,213 ("the '213 Patent"), D807,806 ("the '806 Patent")

and D815,030 ("the '030 Patent") (collectively "the Patents") under the patent laws of the United States. Specifically, the Plaintiffs claim under 35 U.S.C. § 256 that Plaintiff Conti should be added as an inventor or co-inventor of the '903 and '213 Patents (Counts I and II); Plaintiff Bomer should be added as an inventor or co-inventor of the '816 and '030 Patents (Counts III and IV); and Defendant Petrella should be removed as an inventor of the Patents (Counts I-IV). The Plaintiffs also allege that the Defendants are liable for conversion (Count VI), violations of the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1 *et seq.*, for utilizing unfair methods of competition and unfair and deceptive trade practices (Count V), and unjust enrichment (Count VII).

The Defendants now seek the dismissal of this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the Plaintiffs' Complaint fails to state claims upon which relief can be granted. [Doc. 11]. The Plaintiffs have filed an opposition to the Defendants' motion [Doc. 12], to which the Defendants have replied [Doc. 13].

Having been fully briefed, this matter is ripe for disposition.

## II. STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678.

In reviewing the complaint, the Court must accept the truthfulness of all factual allegations but is not required to assume the truth of "bare legal conclusions."  Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011).  "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)."  Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012).

Determining whether a complaint states a plausible claim for relief is "a context-specific task," Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009), which requires the Court to assess whether the factual allegations of the complaint are sufficient "to raise the right to relief above the speculative level," Twombly, 550 U.S. at 555.  As the Fourth Circuit has explained:

> To satisfy this standard, a plaintiff need not forecast evidence sufficient to prove the elements of the claim.  However, the complaint must allege sufficient facts to establish those elements.  Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is probable, the complaint must advance the plaintiff's claim across the line from conceivable to plausible.

Walters, 684 F.3d at 439 (citations and internal quotation marks omitted).

3

## III. FACTUAL BACKGROUND

Taking the well-pleaded factual allegations of the Complaint as true, the following is a summary of the relevant facts.[1]

Defendant Petrella is the President, Chairperson of the Board, and majority owner of Defendant Unlimited Power. [Doc. 1 at ¶ 5]. In January 2013, the Defendants and the Plaintiffs began discussions about designing and manufacturing a portable renewable energy system. [Id. at ¶ 14]. Defendant Petrella gave Plaintiffs a sample system with numerous flaws that prevented it from being sold in the United States. [Id. at ¶ 15]. Defendant Petrella asked the Plaintiffs to design and manufacture a new system without the flaws that could be sold in the United States. [Id.]. The Plaintiffs and the Defendants did not enter a contractual relationship, but Plaintiff Conti agreed to prepare a design for Defendant Petrella's review. [Id. at ¶ 16].

After the meeting, Plaintiff Conti prepared a design and manufacturing proposal titled "Portable Renewable Energy Power System (PREPS) Development Proposal". [Id. at ¶ 17]. The fifteen-page proposal contained extensive details regarding the system's design and operation. [Id. at ¶ 18].

---

[1] In reciting the relevant factual allegations, the Court has disregarded all "bare legal conclusions" asserted in the Complaint, see Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011), as well as "[t]he mere recital of elements of a cause of action," see Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012).

In a footer, the proposal stated that "Nexus Technologies, Inc. is the exclusive owner of all copyrights and all other intellectual property rights contained in this document. This document contains confidential information and embodies trade secrets developed by Nexus Technologies, Inc. at substantial cost and expense." [Id. at ¶ 17]. Plaintiff Conti emailed the proposal to Mr. Petrella's agent on March 5, 2013 and the agent forwarded the proposal to Defendant Petrella. [Id. at ¶ 19]. In 2013 and early 2014, Defendant Petrella conveyed to Plaintiffs that he was trying to obtain funding to design and manufacture prototypes of the system. [Id. at ¶ 20].

On February 24, 2014, Defendant Petrella filed Provisional Application No. 61/966,378 ("the '378 Application") with the United States Patent and Trademark Office ("PTO"). [Id. at ¶ 21]. The '378 Application consisted entirely of the proposal Nexus sent to Defendant Petrella on March 5, 2013, although Defendant Petrella changed the date, removed the word "proposal" from the title, and deleted most of the language associating the proposal with Nexus.[2] [Id. at ¶ 22]. Defendant Petrella filed the '378 Application as an unpublished application, so that members of the public could not see it. [Id.

---

[2] Notably, Defendant Petrella failed to remove a reference to Nexus in Section 1.2 of the '378 Application. [Id. at ¶ 22].

at ¶ 23]. Defendant Petrella also did not notify the Plaintiffs about the filing. [Id.].

A year later, Defendant Petrella filed non-provisional application 14/630,341 ("the '341 Application") on February 24, 2015. [Id.]. Defendant Petrella also filed the '341 Application as an unpublished application. [Id.]. The '341 Application derived from the '378 Application and led to the '903 Patent. [Id.].

Plaintiffs Conti and Nexus continued to correspond with Defendant Petrella regarding the design during 2015 and 2016. [Id. at ¶ 24]. Plaintiff Bomer created additional images of a prototype design during that time. [Id.]. Plaintiffs Conti and Nexus sent those images to Defendant Petrella. [Id.].

On September 29, 2016, Defendant Petrella filed patent application numbers 29/579,328 ("the '328 Application") and 29/579,349 ("the '349 Application") with the PTO. [Id. at ¶ 25]. Defendant Petrella filed the '328 and '349 Applications as unpublished applications and did not notify the Plaintiffs about the filings. [Id.]. Those Applications led to the '816 and the '030 Patents, respectively. [Id.].

On December 1, 2017, Defendant Petrella filed patent application number 15/829,465 ("the '465 Application") with the PTO. [Id. at ¶ 26]. Again, Defendant Petrella did not notify the Plaintiffs about filing the '465

Application.  [Id.].  The '465 Application is a continuation of the '341 Application and led to the '213 Patent.  [Id.].

On January 9, 2018, the PTO issued the '903 Patent.  [Id. at ¶ 10].  On January 16, 2018, the PTO issued the '816 Patent.  [Id. at ¶ 12].  On April 10, 2018, the PTO issued the '030 Patent.  [Id. at ¶ 13].  On September 25, 2018, the PTO issued the '213 Patent.  [Id. at ¶ 11].

Substantial portions of the '903 and '213 Patents derived from the proposals and designs the Plaintiffs shared with the Defendants.  [Id. at ¶¶ 28-30].  The '816 and the '030 Applications also featured designs derived from the images Plaintiff Bomer created and Plaintiffs sent to Defendant Petrella in 2015 and 2016.  [Id. at ¶ 25].  All of the Patents list Defendant Petrella as the sole inventor and Defendant Unlimited Power as the lone assignee.  [Id. at ¶ 10-13].  None of the Patents list Plaintiffs Conti or Bomer as co-inventors or inventors.  [Id.].  During an August 31, 2018 teleconference, Defendant Petrella acknowledged that Plaintiff Bomer was at least a co-inventor of the '816 and '030 Patents and did not dispute that Plaintiff Conti was an inventor of the '903 and '213 Patents.  [Id. at ¶ 31].

## IV. DISCUSSION

### A. Correction of Inventorship

In Counts I, II, III, and IV of the Complaint, the Plaintiffs assert alternative claims under 35 U.S.C. § 256. [Id. at ¶ 32-59]. Specifically, the Plaintiffs request an order directing the Commissioner for Patents to add Plaintiff Conti as an inventor of the '903 and '213 Patents; an order directing the Commissioner for Patents to add Plaintiff Bomer as an inventor of the '816 and '030 Patents; and an order directing the Commissioner for Patents to remove Defendant Petrella as an inventor of the Patents. [Id.]. Alternatively, the Plaintiffs request an order adding Plaintiff Conti as a co-inventor of the '903 and '213 Patents and an order adding Plaintiff Bomer as a co-inventor of the '816 and '030 Patents. [Id.].

The Defendants make three arguments in their Motion to Dismiss. First, the Defendants argue the Complaint does not state a plausible claim upon which relief can be granted because it alleges alternative claims for complete substitution of inventors and co-inventorship. [Doc. 11-1 at ¶ 3]. Second, the Defendants argue that the Plaintiff's claims should be decided by the PTO's Patent Trial and Appeal Board instead of this Court. [Doc. 11-1 at ¶ 5]. Finally, the Defendants argue that the Plaintiffs' claims fail to state

plausible claims for complete substitution of inventors or co-inventorship. [Doc. 11-1 at ¶ 8]. The Court addresses each of these arguments in turn.

### 1. Alternative Claims

Defendants argue that the Complaint does not state a plausible claim because it alleges alternative claims for complete substitution of inventors and co-inventorship. [Doc. 11-1 at p. 3]. Plaintiffs rightly note, however, that parties may plead in the alternative even if the claims are inconsistent. "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2). "If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). "A party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). There is no issue with the Plaintiffs raising alternative claims here since the Federal Rules of Civil Procedure explicitly allow alternative pleading.

### 2. Priority of Invention

The Defendants also claim that the Plaintiff's correction of inventorship claims should be decided by the PTO's Patent Trial and Appeal Board instead of this Court. [Doc. 11-1 at 5]. To support their claim, the Defendants cite to <u>Rubin v. General Hospital Corp.</u>, 523 F. App'x 719, (Fed. Cir. 2013),

an unpublished Federal Circuit Court of Appeals case holding that claims for priority of invention are not disputes under 35 U.S.C. § 256 and should be decided under the PTO's "'interference' procedure of § 135." Id. at 722-23. The Plaintiffs' Complaint, however, does not allege a dispute over *priority* of invention. [Doc. 1]. The Complaint alleges *correction* of inventorship. [Id. at ¶¶ 32-59]. As such, this case is different from a priority contest like in Rubin where the dispute only involved determining the priority of an invention because "there was no 'collaboration'" between the parties. Rubin 523 F. App'x at 722. This Court is an appropriate venue to decide the correction of inventorship claims. See 35 U.S.C. § 256 ("The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned.").

### 3. Plausible Claim for Relief

Finally, the Defendants argue that the Plaintiffs' correction-of-inventorship claims fail to state a plausible claim for complete substitution of inventors or co-inventorship. [Doc. 11-1 at 8]. The Defendants allege the Plaintiffs have failed to plead a claim for complete substitution because they have failed to demonstrate that the Plaintiff "conceived of the total patented invention." [Id. at 4]. Additionally, the Defendants allege the Plaintiffs have

failed to plead a claim for co-inventorship because they have failed to demonstrate collaboration between the parties. [Id. at 7].

"To invent something, in the lexicon of patent law, is to conceive it." Levin v. Septodont Inc., 34 F. App'x 65, 70 (4th Cir. 2002) (citing Burroughs Wellcome Co. v. Barr Lab., Inc., 40 F.3d 1223, 1227–28 (Fed. Cir. 1994) (stating that "[c]onception is the touchstone of inventorship"). Section 256 "addresses two types of inventorship errors — misjoinder and nonjoinder. Misjoinder is the error of naming a person as an inventor who is not an inventor; nonjoinder is the error of omitting an inventor." CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co., 916 F.3d 1350 (Fed. Cir. 2019) (citing Stark v. Advanced Magnetics, Inc., 119 F.3d 1551, 1553 (Fed. Cir. 1997). "Through claims of misjoinder and nonjoinder together, § 256 allows complete substitution of inventors." Id. (citation and internal quotation marks omitted).

"A person who alleges that he is a co-inventor of the invention claimed in an issued patent who was not listed as an inventor on the patent may bring a cause of action to correct inventorship in a district court under 35 U.S.C. § 256." Vapor Point LLC v. Moorhead, 832 F.3d 1343, 1348 (Fed. Cir. 2016) (citing Eli Lilly & Co. v. Aradigm Corp., 376 F.3d 1352, 1357 n.1 (Fed. Cir. 2004)); see also 35 U.S.C. § 116. To prove co-inventorship, the alleged co-

11

inventor must show "some quantum of collaboration." Coda, 2019 WL 847582, at *6. In addition, the Federal Circuit requires a co-inventor to:

> (1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) do more than merely explain to the real inventors well-known concepts and/or the current state of the art.

Levin, at 34 F. App'x 70–71 (citing Pannu v. Iolab Corp., 155 F.3d 1344, 1351 (Fed. Cir. 1998)).

According to the Complaint, Defendant Petrella asked the Plaintiffs to design the system ultimately detailed in the Patents. [Doc. 1 at ¶ 14]. In response to that request, the Plaintiffs and the Defendants exchanged several design proposals over the course of roughly three years. [Id. at ¶¶ 14-24]. The Plaintiffs allege that the Patents mostly replicate the designs Plaintiffs sent, except for a few minor changes intended to conceal the source of the information. [Id. at ¶¶ 22, 23, 25]. As a result, the Plaintiffs contend, the Patents reflect Plaintiff's designs contained in the proposals Plaintiffs sent to the Defendants. [Id. at ¶¶ 23, 25, 29-30]. The Plaintiffs further allege that Defendant Petrella acknowledged as much during an August 31, 2018 teleconference when he admitted that Plaintiffs Conti and Bomer were at least co-inventors in the Patents. [Id. at ¶ 31].

12

These allegations are sufficient to state a plausible claim for complete substitution of inventors or, alternatively, co-inventorship. The allegations allow the reasonable inference that Plaintiffs Conti and Bomer, not Defendant Petrella, conceived the invention in the Patents or alternatively that there was collaboration between the parties showing co-inventorship. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").[3]

### B. State Law Claims

The Defendants also ask this Court to dismiss the Plaintiffs' state-law claims under 28 U.S.C. § 1367(c)(3) for lack of subject-matter jurisdiction. Because the Defendants' Motion to Dismiss the patent claims is denied, Defendants' request to dismiss the state-law claims is also denied.

---

[3] The Defendants argue that the Plaintiffs have not stated a claim for complete substitution of inventors because they have failed to plead conception of the "total patented inventions." [Doc. 11-1 at p. 5]. Taking the allegations in the light most favorable to the Plaintiffs and drawing reasonable inferences therefrom, the Plaintiffs have sufficiently alleged conception of the total patented invention.

# ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion to Dismiss Plaintiff's Complaint [Doc. 11] is **DENIED**.

**IT IS SO ORDERED.**

Signed: July 3, 2019

Martin Reidinger
United States District Judge