# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:19-cv-00009-MR

| | | |
|---|---|---|
| **NEXUS TECHNOLOGIES, INC., DANIEL CONTI, and BENJAMIN BOMER,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | |
| **UNLIMITED POWER LTD. and CHRISTOPHER J. PETRELLA,** | ) ) ) | |
| **Defendants.** | ) ) | **MEMORANDUM OF** |
| **UNLIMITED POWER LTD. and CHRISTOPHER J. PETRELLA,** | ) ) ) | **DECISION AND ORDER** |
| **Counterclaim-Plaintiffs,** | ) ) | |
| **vs.** | ) ) | |
| **NEXUS TECHNOLOGIES, INC., DANIEL CONTI, BENJAMIN BOMER, and EDWARD PRATHER,** | ) ) ) ) | |
| **Counterclaim-Defendants.** | ) ) | |

**THIS MATTER** is before the Court on the Counterclaim-Defendants'

Motion to Dismiss for Failure to State a Claim [Doc. 17].

## I.    BACKGROUND

On January 9, 2019, Nexus Technologies, Inc. ("NTI"), Daniel Conti ("Conti"), and Benjamin Bomer ("Bomer") filed this civil action against Unlimited Power Ltd. ("UPL") and Christopher J. Petrella ("Petrella") (collectively "Unlimited Power") to correct inventorship of patents.  Unlimited Power sought the dismissal of that action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the complaint failed to state claims upon which relief can be granted. [Doc. 11].  The Court denied Unlimited Power's motion.  [Doc. 14].

On July 14, 2019, Unlimited Power filed an amended answer, asserting counterclaims against NTI, Conti, Bomer, and Edward Prather ("Prather") (collectively "Nexus") for: (1) negligent misrepresentation, (2) breach of contract, (3) unjust enrichment/quantum meruit, (4) conversion, (5) constructive fraud, (6) unfair and deceptive trade practices, and (7) civil conspiracy.    [Doc. 16].    Nexus now seeks the dismissal of those counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the counterclaims fail to state claims upon which relief can be granted. [Doc. 17].  Unlimited Power has filed an opposition to Nexus's motion [Doc. 18], to which Nexus has replied [Doc. 19].

Having been fully briefed, this matter is ripe for disposition.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), the counterclaims "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To be "plausible on [their] face," the counterclaims must demonstrate more than "a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678.

In considering the motion to dismiss, the Court accepts the allegations in Unlimited Power's counterclaims as true and construes the allegations in the light most favorable to Unlimited Power.  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 190-92 (4th Cir. 2009).  The Court must accept the truthfulness of all factual allegations but is not required to assume the truth of "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." Consumeraffairs.com, 591 F.3d at 255; see also Giacomelli, 588 F.3d at 189.  "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)."  Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012).

Determining whether the counterclaims state a plausible claim for relief is "a context-specific task," Giacomelli, 588 F.3d at 193, which requires the Court to assess whether the factual allegations of the counterclaims are sufficient "to raise the right to relief above the speculative level," Twombly, 550 U.S. at 555. As the Fourth Circuit has explained:

> To satisfy this standard, a [claimant] need not forecast evidence sufficient to prove the elements of the claim. However, the [counterclaims] must allege sufficient facts to establish those elements. Thus, while a [claimant] does not need to demonstrate in a complaint that the right to relief is probable, the complaint must advance the [claimant's] claim across the line from conceivable to plausible.

Walters, 684 F.3d at 439 (citations and internal quotation marks omitted).

## III.   FACTUAL BACKGROUND

Taking the well-pleaded factual allegations of Unlimited Power's amended answer as true, the following is a summary of the relevant facts.[1]

Conti is the President and Chief Operating Officer of NTI and has power to direct and control its actions. [Doc. 16 at ¶ 1-2]. Prather is the Chief Executive Officer of NTI also has the power to direct and control its actions. [Id. at ¶ 3-4]. Bomer is an employee of NTI. [Id. at ¶ 5].

---

[1] In reciting the relevant factual allegations, the Court has disregarded all "bare legal conclusions" asserted in the amended answer, see Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011), as well as "[t]he mere recital of elements of a cause of action," see Walters, 684 F.3d at 439.

Petrella invented a solar-powered, portable renewable energy system. [Id. at ¶ 6]. On behalf of UPL, Petrella contacted Nexus to see if they could create a manufacturing design of his invention that could be commercially produced. [Id. at ¶ 7-8].

Around January 2013, Petrella met with Conti. [Id. at ¶ 9]. Petrella brought three prototypes of his invention to the meeting. [Id. at ¶ 10]. Petrella asked Nexus if they could produce a thinner version of one of the prototypes that could recharge more easily than the prototype. [Id. at ¶ 11]. Nexus agreed to develop such a system. [Id. at ¶ 12]. After the meeting, Petrella communicated technical information and specifications regarding his invention to Conti to begin the manufacturing process. [Id. at ¶ 13].

Around January 2013, Nexus created a "PREPS proposal" outlining the potential costs of manufacturing the system Petrella requested. [Id.]. The proposal was derived from the technical designs and information that Petrella provided to Nexus. [Id. at ¶ 14]. Nexus marked the proposal as confidential and proprietary to NTI and incorrectly marked the proposal as having been created in 2012. [Id. at ¶ 16-17].

Over the following months, Nexus asked Petrella for technical information regarding the system and Petrella responded by giving them instructions and guidance. [Id. at ¶ 20-21]. Petrella requested and received

office space inside of NTI's building so he could serve as a resource and provide technical information concerning the manufacturing design during the process. [Id. at ¶ 39].

During that time, Conti approached Petrella to negotiate the possibility of UPL purchasing NTI. [Id. at ¶ 25]. Soon after, UPL approached Morgan Stanley Expansion Capital about the possibility of financing UPL's acquisition of NTI. [Id. at ¶ 35]. During the continued negotiations and discussions regarding UPL purchasing NTI, the parties created business plans, brochures, and business cards. [Id. at ¶ 29]. One of the brochures listed NTI's address as the address for UPL, Petrella as the founder and Chief Executive Officer of UPL, Conti as the President and Chief Operating Officer of UPL, and Prather as the Chief Technical Officer of UPL. [Id. at ¶¶ 30-31]. The business plan likewise listed NTI's address as the address for UPL, Petrella as the founder and Chief Executive Officer of UPL, Conti as the President and Chief Operating Officer of UPL, and Prather as the Chief Technical Officer of UPL. [Id. at ¶¶ 32-33]. The business plan also had a chart detailing UPL's financial information if the transaction with NTI was completed. [Id. at ¶ 34].

On February 24, 2014, Petrella filed Provisional Application No. 61/966,378 ("the '378 Application") with the United States Patent and

Trademark Office ("PTO") for his invention. [Id. at ¶ 26; see also Doc. 1 at ¶ 21]. Petrella notified Conti that he was going to file the '378 Application beforehand but Conti did not object to the filing and did not want to share the filing costs. [Doc. 16 at ¶ 26-27]. Conti further stated that he was not an inventor and did not need to be listed on the patent because UPL was going to purchase NTI. [Id. at ¶ 28].

Between 2016 until August 2018, Nexus and its officers had access to UPL's drop box, which contained its patent applications. [Id. at ¶ 36]. Nexus was aware of UPL's patent applications, inventorship, and the technology being claimed. [Id. at ¶ 37]. Nexus also had the opportunity to request changes to the inventorship reflected on the patent applications but did not do so. [Id. at ¶ 38].

The parties agreed that NTI would recoup its manufacturing design costs by adding the development costs to each unit that it sold to UPL. [Id. at ¶ 42]. UPL would buy those units from NTI wholesale before selling them to customers. [Id. at ¶ 43]. NTI promised and represented that it would produce and sell the units to UPL, and Petrella relied on those promises. [Id. at ¶ 45].

NTI, however, falsely represented that it "would be able to successfully provide a manufacturing design," manufacture the system, and provide the

system to UPL. [Id. at ¶ 47]. NTI missed multiple deadlines and milestones before UPL had to seek an alternative manufacturer because NTI had failed to timely provide a manufacturing design that could be "commercialized." [Id. at ¶¶ 50-52]. The merger and acquisition negotiations broke down around August 2018 because of NTI's inability to manufacture the system and disagreements over the purchase price of the system. [Id. at ¶ 52]. NTI's representations had caused UPL to forego other opportunities to secure manufacturing and led UPL's commercialization efforts to be delayed by years. [Id. at ¶ 68].

After the negotiations ended, Conti caused NTI to file patent and trademark applications related to the device invented by Petrella. [Id. at ¶¶ at 36, 77-80, 82-84]. NTI sought to trademark "kWAD," the name that had been given to the product at issue. [Id. at ¶¶ 55-64]. Those applications reflected that NTI intended to use the mark as early as September 17, 2018. [Id.].

At the direction of Conti and Prather, NTI produced the kWAD despite knowing that it had been invented by Petrella and without having license to use the patents or ownership over the patents involved. [Id. at ¶¶ 73, 76]. NTI began producing the kWAD just a few months after claiming to be unable to produce a competent manufacturing design for UPL. [Id. at ¶ 70]. In late

2018 or early 2019, NTI modified its website, nexus-tech.net, to offer the kWAD.  [Id. at ¶¶ 74-75].   By manufacturing and/or selling the kWAD, NTI has and/or will breach its promises and agreements with UPL.  [Id. at ¶ 66].

On November 8, 2018, UPL transferred its patents to Ravensafe, LLC ("Ravensafe").  [Id. at ¶¶ 82-84].  Nexus made, used, sold, offered for sale, or imported the kWAD before UPL transferred the patent rights to Ravensafe. [Id. at ¶ 85].

## IV.  DISCUSSION

### A.  Unjust Enrichment/Quantum Meruit

Nexus argues that Unlimited Power's counterclaims for unjust enrichment and quantum meruit are preempted by federal patent law and that Unlimited Power lacks standing to bring such counterclaims because they assigned the patents to Ravensafe.  [Doc. 17 at 11-12].

Federal Circuit law governs whether federal patent law preempts a state law claim.  Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1361 (Fed. Cir. 1999).  The Federal Circuit has held that federal patent law preempts a state-level unjust enrichment claim related to patents.  Ultra-Precision Mfg., Ltd. v. Ford Motor Co., 411 F.3d 1369, 1382 (Fed. Cir. 2005). As such, Unlimited Power's unjust enrichment claim cannot be based on the patents at issue here.

Unlimited Power, however, argues that their claims are based on the "technical information and designs related to [UPL's] renewable energy system" beyond what is covered by the patents at issue in this case. [Doc. 18 at 10]. Therefore, Unlimited Power argues, the counterclaims are not preempted because patents are "separate and apart from the designs, technical information, and know how" and "Nexus misappropriated Unlimited Power's technical information and designs related to Unlimited Power's renewable energy system, not just the patents." [Id. at 10-11].

As such, Unlimited Power is asserting an unjust enrichment claim that arises from something other than those patents, and thus is not preempted by federal patent law. Therefore, it is also of no importance that the patents have been assigned to Ravensafe. Taking Unlimited Power's allegations as true, and drawing all inferences in their favor, those allegations are sufficient to survive a motion to dismiss.[2] Therefore, Nexus's motion to dismiss Unlimited Power's unjust enrichment claim will be denied.

**B. Conversion**

Nexus next argues that Unlimited Power lacks standing to bring their counterclaim for conversion because the rights in the patents were assigned

---

[2] To ultimately prevail on their unjust enrichment claim, Unlimited Power will need to show that Nexus is being unjustly enriched by information that is not covered by the patents.

to Ravensafe.  [Doc. 17 at 14].  Unlimited Power continues to argue that the patent rights are "separate and apart from the designs, technical information, and know how," and that "Nexus misappropriated Unlimited Power's technical information and designs related to Unlimited Power's renewable energy system, not just the patents."  [Id. at 10-11].

Conversion is defined as "an unauthorized assumption and exercise of the right of ownership over good or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights."  Norman v. Nash Johnson & Sons' Farms, Inc., 140 N.C. App. 390, 414, 537 S.E.2d 248, 264 (2000) (citation omitted).  North Carolina law does not allow for conversion claims related to intangible interests, such as patents.  See Precision Components, Inc. v. C.W. Bearing USA, Inc., 630 F. Supp. 2d 635, 642 (W.D.N.C. 2008) (Reidinger, J.).

Here, however, Unlimited Power argues that that their conversion claim is based on "the technical information and specifications for a portable renewable energy system" beyond what is covered by the patents.  [Doc. 16 at ¶¶ 142-46; Doc. 18 at 10, 12].  While "designs, technical information, and knowhow" necessarily carry intangible attributes, they can be reduced to a tangible for such as blueprints, design schematics, and production protocols. Nexus responds that Unlimited Power has failed to "identify any technical

information apart from the disclosures in the patents." [Doc. 19 at 7]. Though inartfully drafted, Unlimited Power has asserted that some tangible embodiment of designs, technical information, and knowhow has been converted.[3]   Therefore, Nexus's motion to dismiss Unlimited Power's conversion claim will be denied.

### C.    Negligent Misrepresentation

Nexus argues that Unlimited Power fails to establish the elements of negligent misrepresentation. [Doc. 17 at 7]. Unlimited Power counters that the amended answer sufficiently alleges the elements of negligent misrepresentation. [Doc. 18 at 5-9].

"The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." Simms v. Prudential Life Ins. Co. of Am., 140 N.C. App. 529, 532, 537 S.E.2d 237, 240 (2000) (citation omitted).  "With respect to negligent misrepresentation, 'whether liability accrues is highly fact-dependent, with the question of whether a duty is owed a particular plaintiff being of paramount importance.'"   Bob Timberlake Collection, Inc. v. Edwards, 176 N.C. App. 33, 40, 626 S.E.2d 315, 322

---

[3] Whether this claim is ultimately provable remains to be seen.

(2006) (citing <u>Marcus Bros. Textiles, Inc. v. Price Waterhouse, L.L.P.</u>, 350 N.C. 214, 220, 513 S.E.2d 320, 325 (1999)).

Here, Unlimited Power alleges that Nexus "placed themselves in a position of trust and confidence" with Unlimited Power. [Doc. 16 at ¶ 49]. A fiduciary relationship will arise whenever "there is confidence reposed on one side, and resulting domination and influence on the other." <u>Abbitt v. Gregory</u>, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931) (citation omitted). A fiduciary relationship between two parties can create a duty of care because the fiduciary has a duty "to act in the best interests of the other party." <u>Dallaire v. Bank of Am.</u>, N.A., 367 N.C. 363, 367, 760 S.E.2d 263, 266 (2014). The existence of a fiduciary relationship "depends ultimately on the circumstances." <u>HAJMM Co. v. House of Raeford Farms, Inc.</u>, 328 N.C. 578, 588, 403 S.E.2d 483, 489 (1991). A fiduciary relationship will exist "when one party figuratively holds all the cards — all the financial power or technical information, for example." <u>Broussard v. Meineke Disc. Muffler Shops, Inc.</u>, 155 F.3d 331, 348 (4th Cir. 1998). "An arm's length transaction between parties of equal bargaining power . . . absent exceptional circumstances, will not give rise to a fiduciary duty." <u>Dallaire</u>, 367 N.C. at 364, 760 S.E.2d at 264.

The facts alleged by Unlimited Power are that the parties engaged in a business transaction while simultaneously engaging in negotiations involving a merger or acquisition between the two. [Doc. 16 at ¶ 25]. Those negotiations led the parties to go as far as drafting a business plan, seeking financing from a third-party, granting each other access to the others' proprietary information, listing NTI's address as the address for UPL, listing Conti as the President and Chief Operating Officer of UPL, listing Prather as the Chief Technical Officer of UPL, and working out of the same office space. [Id. at ¶¶ 30-34, 39].

While those circumstances suggest that the parties' relationship went beyond a typical arm's length transaction, Unlimited Power's allegations are insufficient to give rise to a claim based on a relationship that featured "confidence reposed on one side, and resulting domination and influence on the other." Abbitt, 201 N.C. at 598, 160 S.E at 906 (citation omitted). Moreover, Unlimited Power makes no allegations to show that Nexus held "all the financial power or technical information." Broussard, 155 F.3d at 348. Instead, Unlimited Power admits that the parties collaborated with one another regarding technical information and that "Nexus treated Unlimited Power as a customer." [Doc. 16 at ¶ 40]. As such, Unlimited Power has failed to plausibly allege that exceptional circumstances giving rise to a duty

of care existed between the parties here. See Dallaire, 367 N.C. at 364, 760 S.E.2d at 264. Therefore, Unlimited Power's claim for negligent misrepresentation will be dismissed.

### D. Constructive Fraud

Nexus argues that Unlimited Power's counterclaim for constructive fraud should be dismissed. [Doc. 17 at 16]. "Constructive fraud arises where a confidential or fiduciary relationship exists." Cash v. State Farm Mut. Auto. Ins. Co., 137 N.C. App. 192, 206, 528 S.E.2d 372, 380, aff'd, 353 N.C. 257, 538 S.E.2d 569 (2000). Nexus argues that it owed no fiduciary duty to Unlimited Power. [Doc. 17 at 16]. Unlimited Power argues that the complicated and unique relationship between the parties supports an inference that Nexus was, in fact, its fiduciary. [Doc. 18 at 13-14].

"A claim based on constructive fraud is sufficient if it alleges facts and circumstances (1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust." Sidden v. Mailman, 137 N.C. App. 669, 677, 529 S.E.2d 266, 272 (quotation omitted).

As discussed, Unlimited Power's allegations are insufficient to show the existence of a fiduciary relationship between the parties. Without such a

relationship, Unlimited Power cannot bring a claim for constructive fraud. Therefore, Unlimited Power's claim for constructive fraud will be dismissed.

### E. Unfair and Deceptive Trade Practices

Nexus argues that Unlimited Power's counterclaim for violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, et seq., ("UDTPA") should be dismissed because the claim fails to allege that the actions in question affected commerce and the claim does not plead the aggravating factors that are required to support a violation of the UDTPA.  [Doc. 17 at 17-19].   Unlimited Power counters that thy have plausibly alleged aggravating circumstances that give rise to a plausible violation of the UDTPA.  [Doc. 18 at 14-15].

A UDTPA claim requires (1) an unfair or deceptive act or practice; (2) in or affecting commerce; which (3) proximately caused actual injury to the claimant or their business.  N.C. Ge. Stat. § 75-1.1.  An act is deceptive "if it has a tendency or capacity to deceive."  Rahamankhan Tobacco Enterprises Pvt. Ltd. v. Evans MacTavish Agricraft, Inc., 989 F.Supp.2d 471, 477 (E.D.N.C. 2013).  An act is unfair "if it offends established public policy," "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," or amounts to an inequitable assertion of ... power or position."  Id.  "What is an unfair or deceptive trade practice usually depends upon the

facts of each case and the impact the practice has in the marketplace." Durling v. King, 146 N.C. App. 483, 489, 554 S.E.2d 1, 4 (N.C. Ct. App. 2001) (citing Pan American World Airways, Inc. v. United States, 371 U.S. 296 (1963)). A mere breach of contract cannot sustain a UDTPA claim; rather the party must also show substantial aggravating circumstances attending the breach of contract. Branch Banking & Trust Co. v. Thompson, 418 S.E.2d 694, 700 (N.C. Ct. App. 1992). Such "[a]ggravating factors include an intentional misrepresentation for the purpose of deceiving another and which has a natural tendency to injure the other." Pan–American Prods. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F.Supp.2d 664, 700 (M.D.N.C. 2011) (citing Baldine v. Furniture Comfort Co., 956 F.Supp. 580, 587–88 (M.D.N.C. 1996)).

The UDTPA covers only activities "in or affecting commerce" like "business activities[,]" defined as "the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized." HAJMM Co., 328 N.C. at 594, 403 S.E.2d at 494.

Here, Unlimited Power has made sufficient allegations to support their UDTPA claim. Unlimited Power alleges that Nexus entered into the manufacturing agreement despite knowing that they could not deliver a

manufacturing design.  [Doc. 16 at ¶¶ 69-70].  Unlimited Power further

alleges that Nexus provided false information regarding their progress and

performance under the agreement.  [Id. ¶ at 111].  They also allege that

Nexus used the design to raise funds from investors despite knowing that

they were not going to perform under the agreement.  [Id. at ¶115].  Unlimited

Power further alleges that Nexus used fraudulent pretenses to steal

Unlimited Power's invention.  [Id. at ¶¶ 142-46, 163].  Finally, Unlimited

Power alleges that Nexus is offering a product derived from the stolen

invention for sale.  [Id. at ¶ 165].

Taken as true, those allegations plausibly allege that Nexus has made

"an intentional misrepresentation for the purpose of deceiving another and

which has a natural tendency to injure the other."  Pan–American Prods. &

Holdings, LLC, 825 F.Supp.2d at 700.  Moreover, the allegations plausibly

allege that Nexus has acted in a way that is "immoral, unethical, oppressive,

unscrupulous, or substantially injurious" beyond simply breaching the

contract between the parties.[4]  Rahamankhan Tobacco, 989 F.Supp.2d at

477.  Those allegations are sufficient to support a plausible UDTPA claim.

Moreover, Unlimited Power has alleged that these events occurred "in

or affecting commerce" as required by the UDTPA.  Unlimited Power alleges

---

[4] And beyond simply infringing the patents.

as much by stating that that Nexus's "actions and business activities . . . affected commerce and [Unlimited Power's] business operations in North Carolina." [Doc. 16 at ¶ 164]. This conclusory allegation is supported by the more detailed allegations throughout the counterclaims setting for the *business* relationship between the parties, culminating in the production and offering for sale of a new product. Those allegations are sufficient to survive a motion to dismiss because they create a plausible claim that the parties were "businesses conduct[ing] their regular, day-to-day activities," or engaged in "activities the business regularly engages in and for which it is organized." HAJMM Co., 328 N.C. at 594, 403 S.E.2d at 494.

For these reasons, Nexus's motion to dismiss the UDTPA claim will be denied.

### F.    Civil Conspiracy

Nexus argues that Unlimited Power's counterclaim for civil conspiracy fails to allege plausible facts to support the claim and fails to specifically identify an underlying tort. [Doc. 17 at 21]. Unlimited Power counters that they have pled "enough facts to raise a reasonable expectation that discovery will reveal" that Nexus is liable for civil conspiracy. [Doc. 18 at 16 (citation and quotations omitted)].

Civil conspiracy requires (1) an agreement between two or more individuals; (2) to do any unlawful act or to do an lawful act in an unlawful way; (3) resulting in injury inflicted by one or more of the conspirators; and (4) pursuant to a common scheme.  State ex. Rel. Cooper v. Ridgeway Brands Mfg., LLC, 362 N.C. 431, 443, 666 S.E.2d 107, 115 (2008).

Unlimited Power alleges that Nexus has taken numerous unlawful actions "in concert and agreement with one or more investors."  [Doc. 16 at ¶¶ 172-73].  Similarly, Unlimited Power alleges that Nexus and "one or more investors or potential investors have engaged in a scheme" that features numerous unlawful acts.  [Id. at ¶¶ 177-80].

These allegations lack any specificity regarding the identity of the parties to the conspiracy, the nature of the agreement between the parties to the alleged conspiracy, or the nature of the purported scheme.  As such, the allegations lack sufficient factual support to rise above the speculative level.  Twombly, 550 U.S. at 555.  Therefore, Unlimited Power's claim for civil conspiracy will be dismissed.

## ORDER

**IT IS, THEREFORE, ORDERED** that Nexus's Motion to Dismiss for Failure to State a Claim [Doc. 17] is **GRANTED IN PART** and **DENIED IN PART**.  Specifically, Nexus's Motion is **GRANTED** with regard to the

negligent misrepresentation, constructive fraud, and civil conspiracy claims and **DENIED** with regard to the unjust enrichment, conversion, and UDTPA claims.

   **IT IS SO ORDERED**.

Signed: October 7, 2019

Martin Reidinger
United States District Judge